**FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

NORTHLIGHT HARBOR, LLC, :
                                                 :
                          Plaintiff,      :                    Hon. Joseph H. Rodriguez
                                                 :
             v.                               :
                                                 :                    Civil Action No. 06-3171
UNITED STATES OF            :
AMERICA,                         :                    **OPINION**
                                                 :
                          Defendant.      :
_____ :

**Appearances:**

> Frederic R. Cohen, Esquire
> Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.
> 4300 Haddonfield Road, Suite 311
> Pennsauken, New Jersey 08109
> > Attorney for Plaintiff

> Anthony J. LaBruna, Jr., Esquire
> Office of the United States Attorney
> 970 Broad Street, Suite 700
> Newark, New Jersey 07102
> > Attorney for Defendant

**RODRIGUEZ**, Senior District Judge:

This matter comes before the Court on two motions: First, the United States of America ("the Government") moves to dismiss the Complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. Second, in addition to opposing the Government's motion to dismiss, Northlight Harbor, LLC ("Plaintiff") moves to

amend the Complaint to cure any jurisdictional defects that may exist.  The Court entertained oral argument on these motions on June 23, 2008.  For the following reasons, as well as those placed on the record during oral argument, the Court grants the Government's motion to dismiss and denies Plaintiff's motion to amend.

## I. BACKGROUND

Plaintiff is a real estate developer.  (See Compl. ¶ 2.)  During the relevant time period, it owned a residential waterfront development along the Barnegat Harbor.  (Id. ¶¶ 2, 6.)

Plaintiff is suing the Government "as a result of the conduct of" the United States Army Corps of Engineers ("Army Corps"), (Compl. ¶ 3,) which maintains several inlets and harbors along the Atlantic coastline.  (Olson Declaration ¶ 3.)  For the purpose of this case, it is noteworthy that the Army Corps conducts maintenance projects, including dredging, in the Barnegat Inlet and Harbor.  (See id. ¶¶ 5, 7.)

A bulkhead extended across Plaintiff's waterfront development.  (Compl. ¶ 14.) Plaintiff owned a portion of this bulkhead, while various governmental entities owned the remainder.  (Id. ¶¶ 14, 15.)  As a condition of its development work, Plaintiff was required to reconstruct and reinforce its portion of the bulkhead.  (Id. ¶ 17.)  It did so between October 2002 and June 2003.  (Id. ¶ 18.)  However, on November 13, 2003, its reconstructed bulkhead partially collapsed and subsequently deteriorated.  (Id. ¶ 19.)

Plaintiff claims the collapse of its bulkhead was caused by a "dramatic change in

2

the pace of the currents, and an increase in the water depth from approximately 8 to 28 feet, in the Barnegat Harbor in the vicinity of [Plaintiff's development], precipitated by a project in the harbor instituted and operated by the [Army Corps]."  (Id. ¶ 20.)  It elaborates:

> Prior to the collapse of the bulkhead, the [Army Corps] commenced a project to dredge the inlet, deposit sand and a series of rocks and a jetty.  The effect of the [Army Corps'] work over a period of time brought the channel physically closer to the bulkhead and resulted in its destruction.  The increased current eroded the material in front of the bulkhead, and at the bottom of the bay, causing the bulkhead's destruction.

(Id. ¶ 21.)

After exhausting administrative remedies, Plaintiff initiated this action against the Government on July 10, 2006, invoking jurisdiction under the Federal Tort Claims Act ("the Act" or "the FTCA"), 28 U.S.C. § 1346(b)(1).  In essence, Plaintiff seeks recovery against the Government for the Army Corps' alleged negligence in conducting its dredging activities.  (See Compl. ¶ 22; see also Pl. Br., p. 11.)  Plaintiff claims the deficient dredging operation caused it damage insomuch as it had to rebuild its bulkhead, and was delayed in moving forward with its development project.  (Compl. ¶¶ 23-25.)

The Government now moves to dismiss this action under Federal Rule 12(b)(1) for lack of subject matter jurisdiction.[1]  It contends the discretionary function exception to the

---

[1]The Government alternatively moves to dismiss the Complaint under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  However, the Court agrees that it lacks jurisdiction over this action.  Therefore, the Government's Rule 12(b)(6) motion is dismissed as moot.

FTCA applies in this case and immunizes it from suit.  Plaintiff opposes this motion, arguing the discretionary function exception is inapplicable to the allegations raised in its Complaint.  To be safe, however, Plaintiff also cross-moves to amend the Complaint to cure any jurisdictional defects that may exist.

## II.  DISCUSSION

### A.  The Government's Motion to Dismiss

#### 1.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the Court's "authority or competence to hear and decide the case before it."  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004).  In the absence of subject matter jurisdiction, this Court is without power to hear the case.  See Cohen v. Kurtzman, 45 F. Supp. 2d 423, 429 (D.N.J. 1999).  The party asserting jurisdiction bears the burden of demonstrating in the record that jurisdiction is proper.  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

In evaluating a Rule 12(b)(1) motion, the Court must determine whether the motion presents a facial or factual attack on subject matter jurisdiction.  Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002).  When a Rule 12(b)(1) motion facially attacks the complaint, the Court must take all allegations in the complaint as true.  Id. at 300 n.4.  However, when the motion attacks the Court's jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and "the court must weigh

the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings."  Id.

### 2.  Analysis of the Government's Motion

The Government's motion contends the Army Corps' dredging activities are immunized from suit by the discretionary function exception to the FTCA.  As discussed below, the Government is correct.

The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."  28 U.S.C. § 2674.  To this end, the Act gives district courts jurisdiction over

> civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Id. § 1394(b)(1).  Thus, the FTCA waives the federal government's sovereign immunity with respect to tort claims for money damages.

This waiver is not without limits, though; it is subject to certain exceptions, one of which is the discretionary function exception.  This exception dictates that the waiver of immunity "shall not apply to . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a

federal agency or an employee of the Government, whether or not the discretion involved

be abused."  28 U.S.C. § 2680(a).  When it applies, the exception deprives a district court

of subject matter jurisdiction over claims arising out of the discretionary action.  See, e.g.,

Merando v. United States, 517 F.3d 160, 162 (3d Cir. 2008) (affirming a district court's

dismissal for lack of subject matter jurisdiction where the discretionary function

exception immunized the United States from suit).

The Supreme Court of the United States has recognized that the discretionary

function exception "marks the boundary between Congress' willingness to impose tort

liability upon the United States and its desire to protect certain governmental activities

from exposure to suit by private individuals."  United States v. S.A. Empresa De Viacao

Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).  In formulating the

exception, "Congress wished to prevent judicial 'second-guessing' of legislative and

administrative decisions grounded in social, economic, and political policy through the

medium of an action in tort."  Id. at 814; see Fisher Bros. Sales, Inc. v. United States, 46

F.3d 279, 284 (3d Cir. 1995) ("The discretionary function exception is designed to protect

policy making by the politically accountable branches of government from interference in

the form of 'second-guessing' by the judiciary–second-guessing the result of which

burdens the public fisc and the prospect of which skews the decisionmaking process of

executive and legislative policymakers.").

Courts employ a two-part test to determine whether the discretionary function

exception applies in a particular case.[2]  "First, a court must determine whether the act

giving rise to the alleged injury and thus the suit involves an 'element of judgment or

choice.'"  Merando, 517 F.3d at 164 (quoting United States v. Gaubert, 499 U.S. 315, 322

(1991)).  "Second, even if the challenged conduct involves an element of judgment, the

court must determine 'whether that judgment is of the kind that the discretionary function

exception was designed to shield.'" Id. at 165 (quoting Gaubert, 499 U.S. at 322-23).

Application of this test is "fact-specific" to each case.  See Mitchell v. United States, 225

F.3d 361, 365 (3d Cir. 2000).

    i.  Does the challenged conduct involve judgment or choice?

    As noted, the first step in the analysis is to determine whether the challenged

action involves an element of judgment or choice.  Merando, 517 F.3d at 164.  The

Supreme Court has stated that this requirement "is not satisfied if a 'federal statute,

regulation, or policy specifically prescribes a course of action for an employee to follow,'

because 'the employee has no rightful option but to adhere to the directive.'"  Gaubert,

499 U.S. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).

    The Army Corps' authority to conduct dredging activities is derived from several

statutory provisions.  For example, 33 U.S.C. § 1 defines the Army Corps' regulatory

authority and provides in relevant part:

--------

[2]While a plaintiff bears the burden of demonstrating that its claims fall within the scope
of the FTCA's waiver of immunity, "'[t]he United States has the burden of proving the
applicability of the discretionary function exception.'"  Merando, 517 F.3d at 164 (citation
omitted) (alteration in original).

> It shall be the duty of the Secretary of Army to prescribe such regulations for the use, administration, and navigation of the navigable waters of the United States as in his judgment the public necessity may require for the protection of life and property, or of operations of the United States in channel improvement, covering all matters not specifically delegated by law to some other executive department.

33 U.S.C. § 1.  Likewise, 33 U.S.C. § 540 vests within the Army Corps responsibility for improving navigable waterways:

> Federal investigations and improvements of rivers, harbors, and other waterways shall be under the jurisdiction of and shall be prosecuted by the Department of the Army under the direction of the Secretary of the Army and the supervision of the Chief of Engineers, except as otherwise specifically provided by Act of Congress, which said investigations and improvements shall include a due regard for wildlife conservation.

33 U.S.C. § 540.  Finally, the relevant language of 33 U.S.C. § 622, which pertains to the implementation of dredging projects, provides: "The Secretary of the Army, acting through the Chief of Engineers . . . , in carrying out projects for improvement of rivers and harbors . . . shall, by contract or otherwise, carry out such work in the manner most economical and advantageous to the United States."  33 U.S.C. § 622.

Significantly, nothing in the above-quoted statutes mandates how dredging activities are to be conducted.  Rather, the plain language of both §§ 1 and 622 evidences congressional intent to confer on the Army Corps wide discretion in matters relating to its dredging activities.  See 33 U.S.C. § 1 (stating that the Secretary of the Army may "*in his judgment*" promulgate regulations for navigable waterways) (emphasis added); id. § 622

(providing that the Secretary of the Army, through the Chief of Engineers, shall carry out improvement projects "*in a manner most economical and advantageous to the United States*") (emphasis added).  This Court previously recognized the wide discretion conferred by these provisions in Williams v. United States Army Corps of Engineers, No. 06-834, 2007 U.S. Dist. LEXIS 56624 (D.N.J. Aug. 2, 2007).  There, the plaintiff's basement was flooded with water from a nearby dredge spoils containment facility owned and operated by the Army Corps.  Id. at *3-4.  When the flooding persisted, the plaintiff sued the Army Corps, asserting a variety of negligence claims.  Id. at *4.  The United States moved to dismiss the case, arguing it was immune from suit under the discretionary function exception.  This Court agreed, and held that §§ 1 and 622, as well as another provision not implicated in this case, granted the Army Corps substantial discretion with respect to its dredging operations and ancillary activities such as the storage of spoils. See id. at *23-24, 27, 29-30.

The conclusion that the Army Corps enjoys wide discretion in conducting dredging activities is bolstered by the evidence in the record.  The Government submitted the declaration of David Olson, the Assistant Chief of Operations for the Philadelphia District of the Army Corps.  Mr. Olson explains that no statutory provision mandates a particular course of conduct with respect to the Army Corps' dredging activities.  (See Olson Declaration ¶ 4.)  Instead, such activities are the product of discretionary judgment by Operations Division personnel based on "accepted sound engineering principles."

(Id.)  Mr. Olson further states that "no [Army Corps] regulations or policies controlled the agency's decision making with regard to how to conduct dredging activities in Barnegat Inlet."  (Id. ¶ 6.)  Again, "[t]hese were all matters of sound engineering discretionary judgment and remain so to this day."  (Id.)

Based on the relevant statutory language and the evidence in the record, the Court holds that the acts about which Plaintiff complains were discretionary.  Nonetheless, Plaintiff vigorously maintains that the Army Corps' dredging activities involved no element of judgment or choice.  It supports this contention with three lines of argument, none of which is ultimately persuasive.

First, Plaintiff cites several statutes, regulations, and policies it claims mandate particular conduct with respect to dredging.  (See Pl. Br., pp. 23-26.)  But most of the provisions it cites do not pertain to the act of dredging,[3] and it seems almost axiomatic

_____

[3]For example, Plaintiff cites to several statutes and regulations relating to the dumping of dredge material.  See 33 U.S.C. § 419 (authorizing the Secretary of the Army to promulgate regulations governing the transportation and dumping of dredge material into navigable waters); 33 C.F.R § 209.200(d)(2) (indicating the Army Corps will solicit the views of the United States Coast Guard to determine how dumping dredge material might affect anchorage of vessels); 33 C.F.R. § 336.1 (setting various rules relating to the discharge of dredge material); 33 C.F.R. § 337.1(a) (generally requiring the Army Corps to issue public notice for projects involving the discharge of dredge material into U.S. waters); 33 C.F.R. § 337.1(a)(17)(vi) (requiring, in certain cases, that notice required under § 337.1(a) includes a statement indicating that the dredge material to be disposed of was evaluated to ensure it will not pose an unreasonable danger to human health, the environment, or economic potentialities); 33 C.F.R. § 337.2(a) (indicating that the Army Corps, should, if practicable, cooperate with state agencies to prevent the discharge of dredge material from causing a violation of federally approved state water quality standards).  Likewise, Plaintiff cites to a statute and regulation each prohibiting a private individual from damaging or interfering with improvements, such as bulkheads, built by the United States.  See 33 U.S.C. § 408; 33 C.F.R. § 209.170(b).  Plaintiff also cites to a statute relating to the study of erosion, see 33 U.S.C. § 426(b), and to several regulations dealing generally with the Army

10

that a statute, regulation, or policy mandating a particular course of conduct will block the

application of § 2680(a) only if it is relevant to the acts about which the plaintiff

complains.  See Gaubert, 499 U.S. at 329 (noting in that case that "neither party has

identified formal regulations *governing the conduct in question*") (emphasis added).

Plaintiff cites only one item that is arguably relevant to the act of dredging–an

Army Corps manual entitled, "Navigation and Dredging Operations and Maintenance

Policies."  (See Pl. Br., Exh. F.)  In particular, Plaintiff highlights a paragraph from this

manual which reads:

> Advance maintenance dredging, to a specified depth and/or
> width, may be performed in critical and/or fast-shoaling areas to
> avoid frequent redredging and ensure the least overall cost of
> maintaining the project.  MSC commanders are authorized to
> approve advance maintenance dredging for new work dredging
> or maintenance dredging of the project.  Written justification is
> required.   As a minimum, the justification for advance
> maintenance dredging should describe historical shoaling rates,
> frequency of dredging, and cost analysis.  Advance maintenance
> dredging involving the removal of rock is not authorized under
> the Operation and Maintenance, General appropriation.
> Advance maintenance shall not be used to provide navigation

Corps' mission, see 33 C.F.R. § 320.1(a)(1) (explaining that since 1968, the Army Corps'
mission has evolved to place additional emphasis on "the full public interest"); 33 C.F.R §
209.200(f)(1) (announcing the Army Corps' policy of conducting its activities in "an atmosphere
of public understanding, trust, and mutual cooperation and in a manner responsive to public
needs and desires"); 33 C.F.R. § 209.200(b)(3)(ii) (obligating district engineers to insure that
regulations affecting the waterways within their jurisdiction are "properly and fairly
administered"); 33 C.F.R. § 320.3(b) (stating that federal agencies conducting development
projects that affect a state's coastal zone must, if practicable, comply with an approved state
coastal zone management program); 33 C.F.R. § 320.3(d) (stating that U.S. policies, regulations,
and laws should be interpreted in accordance with the policies set forth in the National
Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq*.).

> channel dimensions for vessels that exceed the design
> limitations of the project.  Before using advance maintenance,
> the integrity of structures adjacent to the channel and the
> possibility that the material in the advance maintenance portion
> of the channel is significantly different from maintenance
> material should be reviewed.

(Pl. Br., Exh. F.)

Frankly, the Court is again uncertain as to how the material Plaintiff cites relates to the activity at issue in this case.  The Complaint does not allege, and Plaintiff does not argue, that the dredging about which it complains was "advance maintenance dredging," which is the only form of dredging governed by the quoted passage.

Moreover, nothing in this excerpt specifies how dredging activity is to be conducted.  In fact, the opposite appears to be true.  In discussing this paragraph, Plaintiff states that the analysis of adjacent structures and channel material composition "must be" conducted, (Pl. Br., pp. 25-26,) while the manual itself states only that the analysis "should be" conducted.  Thus, although Plaintiff's characterization of the manual's language suggests the analysis is mandatory, the actual language reveals this not to be the case.  See Whalen v. United States, 29 F. Supp. 2d 1093, 1097 (D.S.D. 1998) ("Obviously, statements discussing what 'should' be done cannot be considered mandatory." (citing Weissich v. United States, 4 F.3d 810, 814 (9th Cir. 1993))). Therefore, even if this case involved advance maintenance dredging, nothing in the above-quoted paragraph "'specifically prescribes a course of action for an employee to follow.'"  Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536).

12

Second, Plaintiff argues the act of dredging, unlike the decision to dredge, does not involve discretion because it occurs on the "operational level," rather than the "immune 'governmental planning'" level.  (Pl. Br., pp. 27-28.)  But the Supreme Court has stated that "[d]iscretionary conduct is not confined to the policy or planning level."  Gaubert, 499 U.S. at 325.  There are numerous examples of cases in which the discretionary function exception applied equally to the adoption of a policy and to the policy's actual implementation at the "operational level."  In Varig Airlines, for example, the FAA had adopted a program to "spot-check" airplanes for safety compliance.  See 467 U.S. at 816-17.  The Supreme Court held that not only was the adoption of such a program discretionary, but so too were the acts of FAA employees who executed the program because they had a range of discretion in deciding how to carry out the spot-checking activity.  Id. at 820.  As discussed above, the Army Corps, like the FAA in Varig Airlines, enjoys wide discretion with respect the conduct of its dredging activities.  The operational nature of these activities does not change this.

In attempting to draw a distinction between planning and operational acts, Plaintiff substantially relies on the Supreme Court's decision in Indian Towing Company v. United States, 350 U.S. 61 (1955).  There, the Coast Guard had negligently failed to maintain a lighthouse by allowing the light to go out.  See id. at 62.  Despite its claim of sovereign immunity, the Court held the Coast Guard could be liable under the FTCA for its negligence.  Id. at 69.  As the Gaubert Court explained, however, this decision was not

13

based on any distinction between planning and operational acts.  <u>Gaubert</u>, 499 U.S. at

326.  Instead, the decision was based on the fact that the Coast Guard had voluntarily

undertaken the maintenance of the light.  <u>See</u> <u>Indian Towing</u>, 250 U.S. at 69.  In any

event, Plaintiff's reliance on <u>Indian Towing</u> is misplaced because the discretionary

function exception was not at issue in that case.  <u>See</u> <u>id.</u> at 64; <u>see also</u> <u>Gaubert</u>, 499 U.S.

at 326 (noting "the Government did not even claim the benefit of the [discretionary

function] exception" in <u>Indian Towing</u>).  Therefore, <u>Indian Towing</u> is inapposite in this

case, as is the "nonexistent dichotomy between discretionary functions and operational

activities."  <u>Gaubert</u>, 499 U.S. at 326.

   Third, Plaintiff contends the acts about which it complains are not discretionary

because "dredging plans are based on mathematical calculations and require no discretion

in their execution."  (Pl. Br., p. 36.)  In making this argument, Plaintiff seizes on dicta

from the Supreme Court's opinion in <u>Gaubert</u> in which the Court speculated that "certain

decisions resting on mathematical calculations . . . involve no choice or judgment in

carrying out the calculations . . . ."  499 U.S. at 331.  However, Plaintiff's unsupported

assertion that this case presents such a situation is contradicted by the Olson Declaration,

which explains that "activities associated with dredging projects, [sic] are at all times the

product of discretionary judgments of Operations Division personnel based on accepted

and sound engineering principles."  (Olson Declaration ¶ 4.)

   For these reasons, the acts of dredging about which Plaintiff complains involve an

14

element of judgment or choice.  The Government therefore has satisfied the first prong of the discretionary function test.

ii.  Is the challenged conduct of the variety to be shielded by § 2680(a)?

The second step in the discretionary function test requires the Court to determine whether the discretionary judgment discussed above is of the variety contemplated by Congress when it enacted § 2860(a).  See Merando, 517 F.3d at 165.  "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy."  Gaubert, 499 U.S. at 323.  In making this inquiry, a court's focus "is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  Id. at 325.

Significantly, the Supreme Court has also held that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  Id. at 324.  Furthermore, "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said

15

to be grounded in the policy of the regulatory regime."[4]  Id. at 324-25.

This Court applied the Gaubert presumption in the Williams case.  There, the plaintiff sued the Army Corps after her basement was flooded by an Army Corps dredge spoils containment facility.  See Williams, 2007 U.S. Dist. LEXIS 56624, at *3-4.  Among other things, the plaintiff had alleged the Army Corps negligently maintained this facility, causing the flooding problem.  Id. at *20.  This Court determined that the discretionary function exception immunized the Government and therefore dismissed the claim.  Id. at *30.  In reaching this decision, the Court first held that 33 U.S.C. §§ 1 and 622, as well as another provision not relevant here, conferred wide discretion upon the Army Corps in matters of dredging and ancillary activities such as placement and maintenance of containment facilities.  Id. at *29-30.  This conclusion also triggered the Gaubert presumption, but the plaintiff "offered only inadmissible evidence to even tangentially refute the Army Corps['] discretionary immunity . . . ."  Id. at *30.  The Army Corps' maintenance of the facility therefore was presumptively grounded in policy.  Id.

In this case, as in Williams, the relevant statutory framework of 33 U.S.C. §§ 1 and 622 grants the Army Corps wide discretion relating to its dredging activities.  Under Gaubert, these acts are presumptively grounded in matters of policy.[5]  Moreover, nothing

---

[4]This Court has previously noted the Gaubert holding thus appears to partially shift the burden of proof back to the plaintiff in FTCA cases where the applicability of the discretionary function exception is at issue.  See Williams, 2007 U.S. Dist. LEXIS 56624, at *22-23 n.14.

[5]Even in the absence of the Gaubert presumption, the second step of the discretionary function test would still be satisfied in this case.  Again, the relevant inquiry is whether the

in the Complaint rebuts this presumption.  Instead, it simply alleges the project giving rise

to this suit involved "dredg[ing] the inlet, deposit[ing] sand and a series of rocks and a

jetty."  (Compl. ¶ 21.)  There is no further description of the challenged conduct, nor are

there any allegations that rationally speak to whether or not the act of dredging is

grounded in policy.

Rather than rebutting the <u>Gaubert</u> presumption, Plaintiff argues it does not apply

because <u>Gaubert</u> is distinguishable from this case.  The Court disagrees.

<u>Gaubert</u> arose when a shareholder of an insolvent savings and loan sued the

Government to recoup losses he attributed to negligent supervision by federal regulators.

<u>See</u> 499 U.S. at 319-20.  The Supreme Court determined the relevant statutes and policies

gave the regulators discretion with respect to the supervision of such institutions.  <u>Id.</u> at

329-30.  This finding also triggered the presumption that the actions taken in that case

were based on governmental policy.  <u>Id.</u> at 332.  Accordingly, the Court held the

_____

discretionary acts about which Plaintiff complains are *susceptible* to policy analysis.  <u>Gaubert</u>, 499 U.S. at 325.  Whether any actual policy decisions were made is irrelevant to this question. <u>See Sea-Land Serv. v. United States</u>, 919 F.2d 888, 892 (3d Cir. 1990) ("In determining whether the action of the government involves the permissible exercise of policy judgment, we need not examine the record for evidence of a conscious policy decision . . . .").  A review of the Army Corps' mission and the relevant statutory language reveals its dredging activity is grounded in policy.

The Army Corps must develop and maintain the United States' navigable waterways. <u>Williams,</u> 2007 U.S. Dist. LEXIS 56624, at *2.  In doing so, however, it must balance the nation's needs with available resources.  <u>See</u> 33 U.S.C. § 622 (providing that the Secretary of the Army, through the Chief of Engineers, shall carry out improvement projects "in a manner most economical and advantageous to the United States").  Determinations of when, where, and how to dredge are functions of these considerations, and are therefore susceptible to a policy-based cost/benefit analysis.

17

Government was immune from suit.

In attempting to distinguish this case from Gaubert, Plaintiff argues that the activity at issue in Gaubert "involved discretion and judgment within a range of permissible alternatives," while the Army Corps' dredging activities do not.  (Pl. Br., p. 35.)  But the Court already rejected this position when it determined the Army Corps' conduct in this case was the product of its statutorily-conferred discretion.  Additionally, Plaintiff argues that unlike in Gaubert, where neither party identified any controlling regulations, it cites several provisions relating to dredging.  Again, however, the Court has rejected these provisions as either irrelevant or permitting discretion with respect to dredging activity.  Plaintiff's attempts to distinguish Gaubert therefore are unpersuasive.

For these reasons, the acts about which Plaintiff complains are presumptively grounded in policy considerations.  The Government has thus satisfied the second prong of the discretionary function test, and the Court accordingly concludes that it lacks jurisdiction over Plaintiff's claims.

iii.  Plaintiff's remaining arguments are unpersuasive.

Plaintiff offers two additional arguments that do not fit neatly into the foregoing analysis, but nonetheless require a response.  First, it suggests the discretionary function exception is inapplicable because the Army Corps did not exercise due care when it engaged in the challenged dredging activity.  For support, it cites to the full text of § 2860(a), which excepts from the FTCA's waiver of sovereign immunity:

> Any claim based upon an act or omission of an employee of the Government, *exercising due care*, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2860(a) (emphasis added).  Plaintiff contends the exception does not apply because the crux of its allegations is that the Army Corps did not exercise due care when it dredged the Barnegat Inlet and Harbor.  In making this assertion, Plaintiff misreads the statue.

Section 2860(a) identifies two categories of acts that are excepted from the FTCA's wavier of sovereign immunity, and the due care language pertains only to the category of acts that is *not* implicated in this case.  The Supreme Court, in <u>Dalehite v. United States</u>, explained this point:

> It will be noted from the form of [§ 2860(a)] that there are two phrases describing the excepted acts of government employees. The first deals with acts or omissions of government employees, exercising due care in carrying out statutes or regulations whether valid or not.  It bars tests by tort action of the legality of statutes and regulations.  The second is applicable in this case. It excepts acts of discretion in the performance of governmental functions or duty "whether or not the discretion involved be abused."  Not only agencies of government are covered but all employees exercising discretion.  It is clear that the just-quoted clause as to abuse connotes both negligence and wrongful acts in the exercise of the discretion because the Act itself covers only "negligent or wrongful act or omission of any employee," "within the scope of his office" "where the United States, if a private person, would be liable."  The exercise of discretion could not be abused without negligence or a wrongful act.

19

346 U.S. 15, 33 (1953) (internal citations and footnotes omitted).  Thus, contrary to Plaintiff's assertion, whether the United States exercised due care is irrelevant to the application of the discretionary function exception, which is embodied in the second clause of § 2680(a), and which is at issue in this case.

Second, although Plaintiff has had several months of discovery during which to locate relevant jurisdictional evidence, it contends it should be granted further discovery because it obtained only a small number of documents pertaining to the dredging activities about which it complains.  Plaintiff argues that, as an interim measure, the Government's motion to dismiss should be denied without prejudice pending the completion of this additional discovery.  The problem with this approach, however, is that Plaintiff fails to explain with any degree of specificity what additional discovery will yield or how it would help defeat the Government's motion.  See Doughty v. U.S. Postal Serv., 359 F. Supp. 2d 361, 365-66 (D.N.J. 2005) (rejecting a plaintiff's request for additional discovery in response to a jurisdictional motion to dismiss because the plaintiff did not identify how further discovery would help defeat the pending motion); c.f. Dowling v. Philadelphia, 855 F.2d 136, 139-40 (3d Cir. 1988) (explaining that the need of a non-movant for additional discovery will not preclude summary judgment unless the non-movant demonstrates how the additional discovery would preclude summary judgment).  Additional discovery in this case therefore is inappropriate.

20

B.  Plaintiff's Motion to Amend the Complaint

As noted, in addition to opposing the Government's motion to dismiss, Plaintiff moves to amend its Complaint to cure the jurisdictional defects that might exist.  For the reasons discussed below, the Court denies this request.

Rule 15(a)(1)(A) provides that a party may amend its pleading once as a matter of course at any time before a responsive pleading is filed.  Once a responsive pleading has been filed, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires."  FED. R. CIV. P. 15(a)(2).  Nonetheless, a district court may deny a request to amend if the amendment would be futile.  Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005).

Typically, futility is said to exist where the amended complaint would not withstand a motion to dismiss for failure to state a claim.  See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  However, courts have also found futility in cases where the proposed amendment would not cure an underlying jurisdictional defect in the action.  See, e.g., Narragansett Indian Tribe v. Banfield, 294 F. Supp. 2d 169, 174 (D.R.I. 2003) (denying a motion to amend as futile where the claim was barred by the Rooker-Feldman doctrine and the proposed amendment would not have cured this "jurisdictional infirmity").

In this case, Plaintiff seeks to add a count for trespass in relation to flooding it

21

allegedly sustained as a result of the Army Corps' dredging activities.  It likewise proposes an allegation that the Army Corps negligently supervised the personnel who carried out the dredging activities about which it complains.  Both of these amendments are futile, however, because the claims they raise are ultimately premised on the Army Corps' dredging activity.  As a result, the adjudication of these claims would necessitate an impermissible inquiry into conduct for which the Government enjoys immunity.  Cf. Fisher Bros., 46 F.3d at 286 (rejecting an allegation that FDA staff negligently tested imported fruit for the presence of cyanide because such a claim would require an inquiry into the resulting immunized decision to ban the tainted fruit).

Additionally, Plaintiff wishes to add allegations that the Army Corps violated various statutes, regulations, and policies.  But the provisions to which it refers in the proposed Amended Complaint are the same as those that were already rejected as being irrelevant to the conduct at issue in this case.  See, supra, pp. 10-12 & n.3.

Nothing in Plaintiff's proposed Amended Complaint would cure the jurisdictional defect in this case.  Its motion to amend the Complaint is accordingly denied.

### III.  CONCLUSION

For the foregoing reasons, the Government's motion to dismiss for lack of subject matter jurisdiction is granted.  Its alternative motion to dismiss for failure to state a claim is dismissed as moot.  Because no amendment could cure the jurisdictional defect in this case, Plaintiff's motion to amend the Complaint is denied as futile.  An appropriate Order

accompanies this Opinion.

                                        /S/ Joseph H. Rodriguez
                                        JOSEPH H. RODRIGUEZ
                                        United States District Judge

Dated: June 25, 2008